UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIZABETH HARDING WEINSTEIN,

                Plaintiff,

-against-

JUDGE ROBERT J. MILLER, *et al.*,

                Defendants.

21-CV-4543 (CS)

ORDER OF DISMISSAL

CATHY SEIBEL, United States District Judge:

    Plaintiff brings this *pro se* action, for which the filing fees have been paid, alleging that Defendants are violating her civil rights in state-court proceedings. She seeks money damages and emergency injunctive relief. For the reasons set forth below, the Court dismisses Plaintiff's complaint without prejudice.

## STANDARD OF REVIEW

    The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Moreover, the Court "has the power to dismiss a complaint sua sponte for failure to state a claim," *Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir. 1980), so long as the plaintiff is given notice and "an opportunity to be heard." *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir.1991) (*per curiam*); *see also Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir. 1988); Wright & Miller, *Federal Practice and*

*Procedure* § 1357, at 301 & n. 3. The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

### A. Plaintiff's Complaint

Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988, and the Americans with Disabilities Act of 1990's (ADA) anti-retaliation provision, 42 U.S.C. § 12203. She alleges that she is a "victim of severe domestic violence [and] narcissistic abuse," and that Defendants violated her rights by depriving her of due process, obstructing her access to the court, and committing fraud on the court. (ECF 1, at ¶ 1.) Plaintiff asserts that the alleged violations occurred largely because of the undue influence wielded in state-court proceedings by her husband Brian Stryker Weinstein, a well-known attorney. She sues the New York State Supreme Court, Appellate Division, Second Department (Appellate Division); New York Supreme Court, Westchester County; Judge Miller of the Appellate Division; four staff members of the Appellate Division – Clerk of Court Aprilanne Agostino, Associate Deputy Clerk Wendy Stynes, Program Coordinator Joseph Castellano, and Program Administrator Jeanne Muratore; her husband; Dina Kaplan, her husband's attorney; and Gloria Marchetti-Bruck, her children's court-appointed attorney.

The following allegations are taken from the complaint. On June 1, 2020, Plaintiff's husband filed a Family Offense Petition (FOP) against Plaintiff in the Westchester County Family Court and sought a temporary order of protection (TOP). Plaintiff and her husband were "estranged" at the time, and he was undergoing a "pedophilia investigation." (*Id*. at ¶ 44.) On June 5, 2020, Judge Arlene Katz of the Family Court issued a TOP against Plaintiff, requiring her

to stay away from her husband, her three children, and their home. Immediately after the order was issued, police officers from the Briarcliff Manor Police Department removed Plaintiff from the house she had shared with her husband and children.

Plaintiff responded to the TOP by filing divorce proceedings and a state-court petition for a writ of mandamus in the Westchester County Supreme Court. In December 2020, all of the state-court proceedings were consolidated as one action in the Westchester County Supreme Court. On December 4, 2020, Judge Nancy Quinn-Koba, the presiding state-court judge, issued a new TOP *ex parte*, which again directed Plaintiff to stay away from her husband, her three children, and their home.

Plaintiff asserts that Judge Quinn-Koba and Referee Janet Gandolfo denied her due process, access to her children, access to her property, and access to financial support. Plaintiff filed an emergency request for an order to show cause relating to the December 4, 2020 TOP; Judge Quinn-Koba denied the request.

On or about December 30, 2020, Plaintiff filed an application pursuant to New York Civil Practice and Rules § 5704 in the New York State Supreme Court, Appellate Division, seeking review of the *ex parte* TOP. But the Appellate Division improperly processed the application, failing to place it on the New York State Courts Electronic Filing system (NYSCEF), misplacing it, and not finding it until January 25, 2021. Once the file was found, the Appellate Division scheduled a conference. On February 17, 2021, the conference relating to Plaintiff's § 5704 application was conducted by Associate Deputy Clerk Wendy Stynes and attended by Marchetti-Bruck, the children's court-appointed attorney, and Kaplan, Plaintiff's husband's attorney. Plaintiff objected to the conference because it was not conducted by a judge, and Deputy Clerk

3

Stynes refused to tell her the name of the judge assigned to the case. The next day, on February 17, 2020, Judge Robert J. Miller issued a one-line order denying Plaintiff's § 5704 application.

On April 16, 2021, Judge Quinn-Koba issued a "new unlawful Ex Parte TOP," dating it back to December 4, 2020, although no TOP was in effect from March 5, 2021, to April 16, 2021. (*Id*. at ¶ 89.) Within minutes after the new TOP was issued, Plaintiff was unlawfully pulled over while driving by officers from the Briarcliff Manor Police. The officers arrested Plaintiff for alleged violations of the April 16, 2021 TOP but refused to tell her how she had violated the order. Only after she was handcuffed did the officers inform her that she had violated the TOP on April 5-7, 2021, when in fact no TOP was in effect. Plaintiff was charged with misdemeanor offenses.

That same day, in new proceedings in the Briarcliff Manor Village Court, Village Justice Halper issued a new *ex parte* TOP, directing that Plaintiff stay 1500 feet away from her home and children. She also has been denied discovery by ADAs Lauscher and Miller.

Plaintiff seeks to vacate the April 16, 2021 TOP issued in the Westchester County Supreme Court proceedings, and the second TOP, issued on April 16, 2021, in the new matter in the Briarcliff Manor Village Court. She also seeks money damages.[1]

B.       **Requests for Emergency Injunctive Relief**

Plaintiff alleges that the matter at issue in this case is the Appellate Division's denial to her of due process and access to the courts in proceedings concerning her December 30, 2020

---

[1] Plaintiff attaches to the complaint multiple documents, including a copy of a letter dated February 1, 2021 addressed "[t]o whom it may concern" from Elizabeth Bussian, a Licensed Clinical Social Worker (LCSW) who has been working with Plaintiff since 2013. Bussian writes that she has "no psychiatric concerns" about Plaintiff and that Plaintiff "do[es] not require a psychiatric evaluation." (*Id*. at 36.) Plaintiff also attaches copies of the FOP and TOPs; copies of the dockets of her state-court cases on NYSCEF; transcripts of proceedings that she recorded; and links to videos that she has posted on social media.

§ 5704 application to the Appellate Division for review of the December 4, 2020 TOP issued by the Westchester County Supreme Court. (*See id*. ¶ 39.) But despite Plaintiff's assertion, she raises claims arising out of and seeks relief in proceedings before the Westchester County Supreme Court and Briarcliff Manor Village Court. In fact, since the filing of this action, Plaintiff has submitted at least six letters seeking emergency injunctive relief as to the Westchester County Supreme Court case. (*See* ECF 5, 6, 7, 10, 11, 12.) She generally asserts in these letters that her husband is a pedophile, her children have been kidnapped, she has been a victim of human trafficking, and she has been denied due process and access to the courts in the state-court matters. In some of the letters she claims that her husband and Kaplan, his attorney, are colluding with state actors to violate her rights and retaliate against her for the filing of this action. Plaintiff attaches to all the letters screenshots of purported text messages between her and her husband concerning his alleged pedophilia, and the February 1, 2021 letter from Elizabeth Bussian, indicating that Plaintiff does not need psychiatric evaluation.

    **C.**    **Plaintiff's Competency**

Plaintiff has another pending case before the Court, *Weinstein v. Village of Briarcliff Manor*, No. 21-CV-1996 (CS) (*Weinstein I*), in which she brought claims arising out of her January 4, 2021 arrest for disorderly conduct in the Briarcliff Manor Municipal Building. In that action, she named as defendants: her husband, the Village of Briarcliff Manor, judges, judicial officials, prosecutors, police officials, town officials, and others. Plaintiff asserted that her husband "has been using his inner workings of the Westchester Judiciary" to have the judges, police officers, and district attorneys "discredit" Plaintiff in order to "provide a cover for [her husband's] nefarious actions, abuse of process, and domestic violence thus far." (ECF 7:21-CV-1996, 1 at 20.) In that complaint, Plaintiff sought damages and injunctive relief, including the

recusal of the judge presiding over her criminal case in the Briarcliff Manor Village Court and dismissal of the disorderly conduct charges.

Plaintiff also made allegations in the complaint that suggested that she was undergoing or had undergone a mental competency examination under Article 730 of the New York State Criminal Procedure Law.[2] (*See* ECF 7:21-CV-1996, 1 at 20.) But it was unclear whether Plaintiff has been formally adjudicated incompetent. Plaintiff later filed several submissions in which she sought an immediate stay of Village Justice Howard Code's attempts to hold competency hearings (ECF 7:21-CV-1996, 3 at 2-4), and then "an emergency stay on an unlawful imprisonment and involuntary commitment order issued" on March 9, 2021, by Village Justice Code in her proceedings in the Briarcliff Manor Village Court (ECF 7:21-CV-1996, 5 at 1-2).

On March 17, 2021, the Court issued an order that: (1) dismissed without prejudice Plaintiff's claims against judges and prosecutors on absolute immunity grounds; and (2) declined under the *Younger* abstention doctrine to intervene in Plaintiff's ongoing state-court proceeding. (ECF 7:21-CV-1996, 8.) The order also declined to issue summonses as to the remaining defendants pending information regarding Plaintiff's mental health status.

The Court later issued two subsequent orders stating that, because Plaintiff had raised the issue of her competency by challenging a commitment order allegedly issued by Village Justice Code, the Court would be conducting an inquiry as to Plaintiff's mental health to determine if it would be appropriate to appoint a guardian *ad litem* under Federal Rule of Civil Procedure 17(c). (*See* ECF 7:21-CV-1996, 9, 12.)

---

[2] Article 730 of the New York Criminal Procedure Law provides that any time the court is of the opinion that the defendant may be an incapacitated person, the court must order a psychiatric examination. *See* N.Y. Crim. Pro. L. § 730.30.

# DISCUSSION

### D. Plaintiff's Competency to Litigate

Under Federal Rule of Civil Procedure 17(c)(2), a person who is adjudicated incompetent and who does not have a duly appointed representative may only sue by a next friend or *guardian ad litem*. The Second Circuit has instructed district courts not to make a merits determination in an incompetent person's federal civil action unless the incompetent person is represented by a guardian *ad litem*. *See Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134-35 (2d Cir. 2009).

As noted, Plaintiff's competency is at issue in *Weinstein I*, and the Court is presently conducting an inquiry to determine if Plaintiff is competent, and if not, whether it would be appropriate to appoint a guardian *ad litem* for Plaintiff in that action or take other appropriate measures. But the Court need not wait to complete the inquiry in *Weinstein I* or address the issue of Plaintiff's competency in this action because, as detailed below, Plaintiff's claims are frivolous. *See generally Denton v. Hernandez*, 504 U.S. 25, 34 (1992) (dismissal of complaint on ground of frivolousness is not a dismissal on the merits, but rather an exercise of the court's discretion). But in in an abundance of caution, the Court dismisses this action without prejudice. *See Berrios*, 564 F.3d at 135 (courts should dismiss without prejudice claims of incompetent persons who appear without a guardian *ad litem* or counsel).

### E. *Younger* abstention

Similar to *Weinstein I*, Plaintiff again seeks this Court's intervention in her pending state-court proceedings by repeatedly requesting emergency injunctive relief from orders and actions in those proceedings. But as the Court has previously explained to Plaintiff, such claims must be dismissed. In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding in the absence of special

circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 401 U.S. 37). This doctrine has been extended to civil actions. *See Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006); *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) ("*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings."). Thus, *Younger* abstention is appropriate in only three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). The proceedings with which Plaintiff wishes this Court to interfere fit within those categories.

Specifically, Plaintiff asks the Court to intervene in her ongoing proceedings in the Westchester County Supreme Court and related proceedings in other courts. Although she asserts that she has been denied due process and access to the courts, and that there is a conspiracy to violate her rights stemming from her husband's undue influence in the state-court actions, Plaintiff has alleged no facts showing bad faith, harassment, or irreparable injury with respect to her pending state-court proceedings. The Court will therefore not intervene in Plaintiff's ongoing state-court proceedings and denies her requests for emergency injunctive relief (ECF 5, 6, 7, 10, 11, 12). Her remedy for erroneous decisions in those proceedings, should there be any, would be via the state-court appellate process, not via this Court's intervention.

### F. Judicial Immunity

#### 1. Claims against Judge Miller

The Court must also dismiss Plaintiff's claims against Judge Robert J. Miller of the Appellate Division. Judges are absolutely immune from suit for damages for any actions taken

within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff's claims against Judge Miller arise out of his ruling denying her § 5704 application filed in the Appellate Division. That ruling was within the scope of Judge Miller's judicial capacity and jurisdiction. The Court therefore dismisses Plaintiff's claims against Judge Miller under the doctrine of judicial immunity and as frivolous. *See Neitzke*, 490 U.S. at 325 (stating that a claim is frivolous if it "lacks and arguable basis either in law or in fact"); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke*, 490 U.S. at 327)); *see also Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

### 2. Claims against Appellate Division Clerks

Plaintiff's claims against the four Appellate Division employees – Clerk of Court Aprilanne Agostino, Associate Deputy Clerk Stynes, Program Coordinator Joseph Castellano, and Program Administrator Jeanne Muratore – must also be dismissed. Judicial immunity has been extended to court clerks and "others who perform functions closely associated with the judicial process" when they are performing discretionary acts of a judicial nature which are essential to the judicial process, such as filing court documents or managing a court's calendar. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010) ("Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are generally entitled to absolute immunity); *Pikulin v. Gonzales*, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y Apr. 5, 2007) (extending judicial immunity to the federal court clerk with respect to claims arising out of the filing and docketing of legal documents).

Here, Plaintiff asserts claims against the Appellate Division clerks for actions they took in relation to her December 30, 2020 § 5704 application for review of the December 4, 2020 temporary order of protection issued by Westchester County Supreme Court. In particular, Plaintiff takes issue with how the application was processed, claiming that the clerks improperly failed to place her petition on the New York State Courts Electronic Filing system, misplaced it, and did not find it until January 25, 2021. Further, once the file was found, the Appellate Division held a conference conducted by Stynes, rather than a judge or a full panel of the Appellate Division. But the clerks are not subject to liability when performing the administrative tasks described by Plaintiff. Court clerks are entitled to immunity for harm caused by action

undertaken pursuant to the direction of a judicial officer or court policy. *Rodriguez*, 116 F.3d at 67. As it appears that the complained-of actions of the Appellate Division clerks involved filing and docketing documents and implementing court procedures related to Plaintiff's § 5704 application, they are entitled to absolute judicial immunity. The Court therefore dismisses Plaintiff's claims against Defendants Agostino, Stynes, Castellano, and Muratore under the doctrine of judicial immunity and as frivolous.

G.     **Eleventh Amendment Immunity**

Plaintiff's claims against the Appellate Division and the Westchester County Supreme Court are barred under the Eleventh Amendment. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

As the Appellate Division and the Westchester County Supreme Court are part of the New York State Unified Court System, which is an agency of the State of New York, the two state-court defendants are immune from suit under the Eleventh Amendment. *See Gollomp*, 568 F.3d at 368 (holding that the New York State Unified Court System "is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity"); *Goldberg v. Roth,* No. 99-CV-11591, 2001 WL 1622201, at *4 (S.D.N.Y. Dec. 17, 2001) (citations omitted) (holding that New York courts are immune from suit under the Eleventh Amendment). Plaintiff's

§ 1983 claims against the Appellate Division and the Westchester County Supreme Court are dismissed as barred under the Eleventh Amendment and as frivolous.³

### H. Claims against Private Parties

Finally, to the extent Plaintiff brings claim under § 1983 against her husband Brian Stryker Weinstein; Dina Kaplan, her husband's attorney; and Gloria Marchetti-Bruck, her children's court-appointed attorney, those claims must also be dismissed. A claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As Brian Weinstein, Kaplan, and Marchetti-Bruck are private parties who are not alleged to have been working for any state or other government body, and Plaintiff does not allege any facts suggesting that these defendants' actions could be "fairly attributable" to the state, the defendants are not subject to liability under § 1983.⁴ *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838-42 (1982); *Flagg Bros. v.*

---

³ *See also Zuckerman v. App. Div., Second Dep't, Sup. Ct.*, 421 F.2d 625, 626 (2d Cir. 1970) (holding that the Appellate Division, Second Department is not a "person" for the purpose of § 1983 liability). *See generally Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding that a state agency is not a "person" for the purpose of § 1983 liability).

⁴ Marchetti-Bruck's status as Plaintiff's children's court-appointed attorney does not make her a state actor for purposes of § 1983. Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a person by private counsel in state-court criminal or other proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d

*Brooks*, 436 U.S. 149, 155-57 (1978); *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The Court dismisses Plaintiff's claims against Defendant Brian Weinstein, Kaplan, and Marchetti-Bruck.

I. **Claims under the ADA**

Plaintiff also brings her claims citing to the ADA's anti-retaliation provision, 42 U.S.C. § 12203, which generally prohibits adverse action taken against a person who has engaged in protected activity.[5] Plaintiff does not allege any facts suggesting that she made complaint of disability discrimination or that any Defendant discriminated or retaliated against her because of any such complaint, and accordingly the claim is frivolous.

J. **Leave to Amend Denied**

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)). But a court has inherent power to dismiss without leave to amend or replead in "where . . . the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (citation omitted), or where amendment would otherwise be futile, *Hill v. Curcione*, 657 F. 3d 116, 123-24 (2d Cir. 2011); *see also Shapiro v. McManus*, 136 S. Ct. 450, 455-56 (2015) (holding that federal-question jurisdiction is lacking where the claims are "wholly insubstantial

---

Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of section 1983).

[5] The provision provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

and frivolous," "essentially fictitious," or "obviously without merit" (internal quotation marks and citations omitted)). Because Plaintiff's assertions are frivolous and cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend her complaint.

**K.    Consolidation**

Because this case and No. 21-CV-1996 involve a common question – specifically, Plaintiff's competence – they are hereby consolidated, pursuant to Federal Rule of Civil Procedure 42, only for purposes of competency proceedings.

**CONCLUSION**

The Court denies Plaintiff's requests for emergency injunctive relief (ECF 5, 6, 7, 10, 11, 12) under the *Younger* abstention doctrine.

The Court dismisses Plaintiff's claims without prejudice on immunity grounds and as frivolous.

The Court consolidates this case with No. 21-CV-1996 only for purposes of competency proceedings.

Although Plaintiff paid the filing fees for this action, the Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Plaintiff has consented to receive electronic service of Court filings. (ECF 3.)

SO ORDERED.

Dated:   July 15, 2021
         White Plains, New York

_____
CATHY SEIBEL
United States District Judge